Receipt number AUSFCC-6147343

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **BOSTON EDISON COMPANY,** | Case No. _____  20-529 C |
| Plaintiff, | Judge _____ |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

## COMPLAINT

Plaintiff, Boston Edison Company ("Boston Edison"), by and through its undersigned counsel, files this Complaint against Defendant, the United States of America, acting by and through the United States Department of Energy ("DOE"), and states as follows:

## NATURE OF THE CASE

1. Boston Edison seeks to recover damages from Defendant for Defendant's material breach of its contractual obligation to collect and dispose of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by the Pilgrim Nuclear Power Station ("Pilgrim").

2. Boston Edison entered into a Standard Contract with DOE in 1983, while it owned Pilgrim, pursuant to which DOE was obligated to collect and dispose of Pilgrim's SNF, beginning no later than January 31, 1998. DOE breached its obligations under the Standard Contract. Indeed, DOE has still not fulfilled its contractual obligations relating to SNF more than two decades after the 1998 deadline, and is not expected to do so in the foreseeable future.

3. Boston Edison sold Pilgrim to Entergy Nuclear Generation Company, LLC ("Entergy") in

1999.  The Pilgrim sale agreement expressly provided that, notwithstanding the sale, Boston Edison retained its claim for damages against DOE for breach of the Standard Contract, whether relating to periods prior to or following the sale.  Also as part of the Pilgrim sale transaction, Boston Edison was required to pay Entergy tens of millions of dollars to cover the costs of storing SNF – costs which Pilgrim was required to incur as a direct, proximate and foreseeable result of DOE's breach of its obligation to collect and dispose of Pilgrim SNF under the Standard Contract, in order to mitigate DOE's material breach.  Boston Edison's payment for the costs of SNF storage was included as part of the Decommissioning Trust Fund that it transferred to Entergy at the time of sale.

4. In previous litigation brought by Boston Edison, this Court found that DOE breached its contractual obligation to Boston Edison under the Standard Contract to accept and dispose of Pilgrim's SNF.  The Court further found that Boston Edison retained its damages claim against DOE for breach of the Standard Contract when it sold Pilgrim, and that the claim is not time-barred.  However, the Court also determined that Boston Edison's claim had not yet matured at the time of the prior litigation, and would only be ripe after the decommissioning of the Pilgrim plant had begun, at which time Pilgrim would expend funds for the storage and management of SNF in connection with the decommissioning process, and/or funds originating from the Decommissioning Trust Fund, resulting in ascertainable and recoverable damages for Boston Edison.  Thus, previous actions filed by Boston Edison to recover SNF costs have been dismissed, without prejudice, as premature – but the Court has repeatedly held that Boston Edison has a valid claim for breach of contract that could be brought against DOE when the claim is ripe.

5. At this time, all events that might be deemed necessary to make Boston Edison's claim ripe, under this Court's prior rulings, have occurred.  The Pilgrim plant has ceased operations, and

substantial decommissioning activities have taken place.  A total of $56 million has been spent on SNF costs in connection with the decommissioning activities at Pilgrim in 2019 alone to mitigate DOE's breach of the Standard Contract.  The SNF costs that have been incurred have been paid from the Decommissioning Trust Fund, as specifically authorized by the Nuclear Regulatory Commission ("NRC").

6. Thus, there is no longer any procedural barrier to Boston Edison's recovery of damages for the injury which the Court has found that Boston Edison sustained as a result of DOE's breach of its contractual obligations to Boston Edison under the Standard Contract.

7. The damages to which Boston Edison is entitled for DOE's breach are not less than $40 million, with the amount to be determined at trial.  These damages will be returned to Boston Edison's ratepayers.

## JURISDICTION

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1).

9. DOE's failure to comply with its unconditional contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material breach of its Standard Contract, for which Boston Edison may seek damages without exhausting any administrative remedies.

10. DOE's failure to comply with its obligations under the Standard Contract constitutes a material breach of contract.

## PARTIES

11. Plaintiff Boston Edison is an electric transmission and distribution company.  It is an operating subsidiary of Eversource Energy, a Massachusetts voluntary association.  Boston Edison (under its current name, NSTAR Electric Company d/b/a Eversource Energy) provides electricity and related energy services to over one million customers in Massachusetts.

12.    Defendant is the United States of America, acting by and through DOE.

## FACTUAL BACKGROUND

### The Pilgrim Plant

13.    Pilgrim, located in Plymouth, Massachusetts, is a boiling water nuclear reactor that went into commercial operation in 1972. Pilgrim was in continuous operation, with the exception of maintenance and refueling outages, until it ceased operations on May 31, 2019.

14.    Pilgrim "burned" nuclear fuel assemblies in its reactor core, and when those fuel assemblies were "spent," they were removed to a spent-fuel pool. In the pool, the still-radioactive spent fuel assemblies are stored in racks under water.

15.    A nuclear plant can achieve additional interim wet storage of SNF by installing additional racks in the spent-fuel pool. However, dry storage in casks made of steel and concrete is required for longer-term storage of SNF.

### The Standard Contract

16.    Boston Edison entered into a Standard Contract with DOE in 1983, pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 *et seq*.

17.    Under its Standard Contract, Boston Edison was required to pay millions of dollars of fees into the Nuclear Waste Fund, and DOE was required to accept, transport, and permanently dispose of Pilgrim's SNF beginning no later than January 31, 1998.

18.    Boston Edison fully complied with all of its obligations under the Standard Contract. DOE failed (and continues to fail) to perform its obligation to collect and dispose of SNF. Indeed, DOE has breached (and continues to breach) similar contracts nationwide. DOE is not expected to fulfill its SNF obligations under the Standard Contract in the foreseeable future.

**Boston Edison's 1999 Sale of Pilgrim**

19. In 1997, Massachusetts enacted legislation that required utilities, including Boston Edison, to sell their electricity generation operations or to functionally separate their generation operations from their transmission and distribution operations. Boston Edison responded by selling the Pilgrim plant, fuel, inventory, and land, after a competitive auction, to Entergy, in 1999.

20. As of the closing date for the sale, Boston Edison had contributed more than $89 million into the DOE's Nuclear Waste Fund.

21. Boston Edison was required to pay Entergy, as part of the sale, tens of millions of dollars for long-term on-site storage of Pilgrim SNF as a direct, proximate and foreseeable result of DOE's breach of its obligation to collect and dispose of Pilgrim SNF under the Standard Contract. Boston Edison's payment for these mitigation costs was included as part of the Decommissioning Trust Fund for Pilgrim that it transferred to Entergy at the time of sale.

22. The sale agreement between Boston Edison and Entergy expressly reserved to Boston Edison its claims against DOE related to DOE's breach of the Standard Contract, whether relating to periods prior to or following the closing date. This Court has repeatedly affirmed that Boston Edison retained its claim for DOE's breach of the Standard Contract after the sale of Pilgrim.

**Boston Edison's 1999 Lawsuit Against DOE**

23. On July 12, 1999, the day before the sale of Pilgrim to Entergy, Boston Edison filed suit against DOE for its breach of the Standard Contract it entered into with Boston Edison.

24. In that suit, this Court found that DOE breached its contractual obligation to Boston Edison to accept and dispose of Boston Edison's SNF under the Standard Contract. The Court further found that Boston Edison retained its damages claim against DOE when it sold the Pilgrim plant.

25. In 2008, after trial, the suit resulted in a judgment by this Court in favor of Boston Edison

and against DOE for breach of contract, and an award of damages to Boston Edison of $40,030,000.

26. However, in 2011, the U.S. Court of Appeals for the Federal Circuit reversed this Court's judgment and remanded the case to this Court for further proceedings. In doing so, the Federal Circuit affirmed this Court's holding that DOE had breached its contract with Boston Edison, resulting in a legally cognizable injury to Boston Edison, but rejected the legal theory that allowed Boston Edison to recover damages for that breach immediately. The Federal Circuit held that the amount of damages was not yet ascertainable at that time, and remanded the case to this Court to determine the respective rights of Boston Edison and Entergy regarding DOE's breach.

27. After remand from the Federal Circuit, this Court held in 2012 that Boston Edison had suffered an injury from DOE's breach of contract, and that Boston Edison had retained, after its sale of Pilgrim, its nascent claim against DOE to recover damages for that injury – which would become ripe when expenditures for SNF storage were made at the time of the decommissioning of the Pilgrim plant, thereby making the amount of damages ascertainable, and recoverable by Boston Edison, consistent with the Federal Circuit's opinion. This Court expressly rejected DOE's argument that Boston Edison did not have a valid claim for SNF costs attributable to DOE's breach of the Standard Contract – rather, the Court ruled, Boston Edison had a nascent claim for damages that could be brought by Boston Edison in the future. The Court therefore dismissed Boston Edison's lawsuit as premature, noting that this dismissal was without prejudice, that the substantive law explicitly provided that Boston Edison could file a new lawsuit to recover SNF costs in the future when its claim became ripe, and that the statute of limitations would not begin to run on Boston Edison's nascent claim until that time.

**Boston Edison's 2016 Lawsuit Against DOE**

28.     On November 10, 2015, Entergy submitted a letter to the NRC stating that it had "decided to permanently cease power operations at the Pilgrim Nuclear Power Station no later than June 1, 2019."

29.     Believing that this letter constituted the sort of event that would make Boston Edison's claim ripe for filing under this Court's prior ruling, Boston Edison again brought an action in 2016 against DOE, seeking recovery for DOE's breach of the Standard Contract.

30.     However, the Court held in 2017 that Boston Edison's claim was still not yet ripe, on the ground that Entergy's November 10, 2015 letter did not mean that decommissioning activities at Pilgrim had begun, but merely that Entergy had decided to begin decommissioning activities in the future, i.e., no later than June 1, 2019.

31.     Nevertheless, in its 2017 ruling, the Court reaffirmed that Boston Edison would have a viable claim when decommissioning activities commenced – at which time Pilgrim would expend funds for the storage and management of SNF in connection with the decommissioning process, and/or funds originating from the Decommissioning Trust Fund, resulting in ascertainable and recoverable damages for Boston Edison.  The Court again expressly rejected the argument that Boston Edison had not retained its claim against DOE in the 1999 sale of Pilgrim, as well as the argument that Boston Edison's claim was barred by the statute of limitations. The Court emphasized that it was dismissing the lawsuit "without prejudice and with leave to refile when costs to mitigate DOE's breach of the Standard Contract are incurred on decommissioning activities at Pilgrim."  The Court further stated that when Entergy begins the decommissioning of Pilgrim, "it will continue to incur expenses for the storage of SNF.  At that point, Boston Edison's claim then will become viable because damages for post-operation storage will be incurred."

**Boston Edison's Claims Are Now Ripe**

32. On November 16, 2018, Entergy filed a License Transfer Application ("LTA") and related documents with the NRC in connection with a proposed sale of the Pilgrim facility. Entergy sought to transfer control of the Pilgrim facility, operating authority and operating license, and the general license for the Pilgrim Independent Spent Fuel Storage Installation ("ISFSI"), to Holtec International and its direct and indirect subsidiaries (collectively, "Holtec"). Under the proposed sale, Holtec would assume ownership of and responsibility for Pilgrim and its associated assets and real estate, including its SNF and its Decommissioning Trust Fund.

33. The LTA included a cost estimate showing that Holtec intended to spend over $500 million for SNF costs at the Pilgrim facility in connection with decommissioning (in addition to other costs to be incurred in connection with decommissioning) – and that approximately $54 million in SNF expenditures would occur in 2019, approximately $85 million in 2020, and approximately $82 million in 2021, all of which Holtec intended to withdraw (subject to NRC approval, which Holtec requested, and which the NRC ultimately granted) from the Pilgrim Decommissioning Trust Fund. Entergy and Holtec informed the NRC that they anticipated that the Pilgrim plant will need to maintain dozens of SNF dry casks (holding thousands of radioactive spent fuel assemblies) onsite for many years in connection with decommissioning.

34. On May 31, 2019, Pilgrim ceased operations and began decommissioning activities. Pilgrim thereupon undertook activities involving the storage and maintenance of SNF, in connection with decommissioning, that were directly, proximately and foreseeably caused by DOE's prior breach of its obligations under the Standard Contract that it entered into with Boston Edison.

35. On June 10, 2019, Entergy submitted to the NRC a certification stating that Pilgrim

permanently ceased power operations on May 31, 2019, and that as of June 9, 2019, all fuel had been removed from the Pilgrim reactor vessel and placed in the spent fuel pool.

36. On August 22, 2019, NRC staff issued an order approving the LTA, allowing the sale of Pilgrim to go forward.

37. Also on August 22, 2019, NRC staff issued an order granting Holtec an exemption permitting Holtec to use funds from the Decommissioning Trust Fund for SNF costs, as Holtec had planned. In doing so, NRC staff noted that SNF management "is an integral part of the planned decommissioning and license termination process." NRC staff further noted that, according to Entergy's March 28, 2019 annual report on the status of the Decommissioning Trust Fund, the fund contained a balance of approximately $1.028 billion as of December 31, 2018, and approximately $1.043 billion as of February 28, 2019, which NRC staff deemed sufficient to fund all costs related to decommissioning and SNF management and storage for the remainder of the decommissioning process.

38. On August 26, 2019, Entergy's sale of Pilgrim to Holtec was completed.

39. On March 31, 2020, Holtec submitted its annual report to the NRC regarding funding for decommissioning and managing irradiated fuel (i.e., SNF), as required by NRC regulations. The report states that Holtec spent $56 million for SNF costs in 2019 (apart from other expenditures in connection with decommissioning), after Holtec purchased Pilgrim in August 2019 (and thus after decommissioning activities began). In addition, Holtec projected that it would spend $66 million in SNF costs in 2020, and Holtec has already spent approximately one-third of that amount on SNF costs in 2020. Holtec's report to the NRC also makes clear that the source of funding for all 2019 SNF costs, and all subsequent SNF costs, is the Decommissioning Trust Fund.

40. Now that decommissioning activities have begun, and, in 2019 alone, at least $56 million has been spent on SNF costs from the Decommissioning Trust Fund, Boston Edison's claim for damages against DOE is ripe under this Court's prior rulings.

41. DOE still has not taken or disposed of, and in the foreseeable future cannot take custody or dispose of, SNF. DOE has not sited, licensed, constructed, or placed in operation a SNF disposal facility, nor has it made provisions for the temporary storage of SNF. DOE is unlikely to fulfill its obligation under the Standard Contract for decades, if at all.

42. This Court previously ruled that Boston Edison has a valid claim for breach of contract against DOE (determining in 2008 that Boston Edison's damages from that breach exceeded $40 million), that Boston Edison retained that claim after the sale of Pilgrim, and that the claim was not time-barred – Boston Edison had only to wait until after decommissioning had begun, and SNF costs were incurred in connection with decommissioning and/or from the Decommissioning Trust Fund, before it could bring its claim. Now decommissioning has begun and Pilgrim has spent over $56 million for SNF costs in connection with decommissioning from the Decommissioning Trust Fund – expenditures that would not have been necessary were it not for DOE's prior breach of the Standard Contract. The SNF-related costs that have been incurred are mitigation costs that were directly, proximately and foreseeably caused by DOE's prior breach of the Standard Contract it entered into with Boston Edison. Under well-settled precedent regarding the Standard Contract, DOE is liable for these SNF costs – and the Court's prior rulings pertaining to Pilgrim make clear that, as between Boston Edison and Entergy/Holtec, the party that is entitled to recover these SNF costs is Boston Edison, which retained its claim for injuries suffered as a result of DOE's breach, whether relating to periods prior to or following the sale, pursuant to the terms of the 1999 sale agreement.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **(Breach of Contract)**

43. Boston Edison repeats and re-alleges here all the allegations as set forth in paragraphs 1 through 42 above.

44. The Standard Contract created unconditional obligations for DOE to begin accepting Boston Edison's SNF by January 31, 1998. In consideration thereof, Boston Edison paid more than $89 million into the Nuclear Waste Fund.

45. DOE failed to perform its obligations under the Standard Contract to begin accepting Pilgrim's SNF by January 31, 1998. To this day, DOE has not begun to accept any of Pilgrim's SNF.

46. DOE's failure to comply with its obligations under the Standard Contract constitutes a material breach of the Standard Contract, for which Boston Edison is entitled to damages.

47. Boston Edison was forced to pay over $40 million for the storage and management of SNF that DOE failed to timely accept. This payment was to mitigate DOE's breach of the Standard Contract and was directly, proximately, and foreseeably caused by DOE's material breach.

48. After decommissioning activities began, the Pilgrim facility incurred more than $56 million in SNF costs, in 2019 alone, in connection with decommissioning and paid for from the Decommissioning Trust Fund. These SNF costs were the direct, proximate and foreseeable result of DOE's prior breach.

49. Boston Edison retained its claim against DOE for breach of the Standard Contract, whether relating to periods prior to or following the sale, when it sold the Pilgrim facility in 1999.

50. All the conditions necessary to make Boston Edison's claim for breach of contract against

DOE ripe, and its damages ascertainable and recoverable, as set forth in prior court decisions, have occurred.

51. Boston Edison is entitled to recover damages in an amount to be determined at trial, but not less than $40 million, for DOE's breach of the contract it entered into with Boston Edison.

52. Boston Edison reserves all rights to recover presently unascertainable damages that may be caused by DOE's continuing breach of the Standard Contract.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

53. Boston Edison repeats and re-alleges here all the allegations as set forth in paragraphs 1 through 52 above.

54. The Standard Contract between Boston Edison and DOE contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to Boston Edison's contractual rights. DOE has breached the covenant of good faith and fair dealing by failing and refusing to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the contract; and by failing to dispose of Pilgrim's SNF.

55. DOE's failure to act has not been the result of inadequate resources. DOE's expenditures from the Nuclear Waste Fund consistently have been well below the level of annual receipts into the Fund. DOE collected ample funds to comply with its contractual obligations.

56. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities.

57. As a direct, proximate and foreseeable result of DOE's breach of the implied covenant of good faith and fair dealing, Boston Edison suffered and will continue to suffer damages as alleged

above.  Boston Edison is entitled to recover damages in an amount to be determined at trial, but not less than $40 million, for DOE's breach of its covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Boston Edison respectfully requests that the Court enter judgment in its favor and against the United States as follows:

(1)     On Count I, for damages in an amount to be determined at trial, but not less than $40 million;

(2)     On Count II, for damages in an amount to be determined at trial, but not less than $40 million;

(3)     Pre-judgment and post-judgment interest as permitted by law;

(4)     Costs of suit, including reasonable attorneys' fees, as permitted by law; and

(5)     Such other and further relief as this Court may deem just and proper.


Dated: April 29, 2020               By:      /s/Richard J. Conway

                                      Richard J. Conway
                                      BLANK ROME LLP
                                      1825 Eye Street, N.W.
                                      Washington, D.C.  20006
                                      (202) 420-2200 telephone
                                      (202) 420-2201 facsimile
                                      RConway@BlankRome.com
                                      *Counsel of Record for Boston Edison Company*

Of Counsel:

Frederick M. Lowther
Adam Proujansky
BLANK ROME LLP
1825 Eye Street, N.W.
Washington, D.C.  20006
(202) 420-2200

Nicholas W. Mattia, Jr.
10304 Green Links Drive
Tampa, Florida 33626
(813) 792-8699

Neven Rabadjija
Deputy General Counsel
Eversource Energy
800 Boylston Street, 17th Floor
Boston, MA 02199-0228
(617) 424-2223